**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BARBARA CERIANI                    :         CIVIL ACTION

        v.                              :

JO ANNE B. BARNHART               :         NO. 06-1762

<u>**MEMORANDUM**</u>

**Baylson, J.**                                                        **May 31, 2007**

**I.**      <u>**Introduction**</u>

Plaintiff Barbara Ceriani brings this action pursuant to 42 U.S.C. § 405(g) for review of the Defendant Social Security Commissioner's final decision to deny her application for Social Security Disability Insurance Benefits ("DIB") under 42 U.S.C. §§ 401-33, 1381-83.  Plaintiff contends she has been disabled within the meaning of the Social Security Act since at least December 11, 2001, when she was terminated from her job as a bookkeeper/clerk and customer service representative.  Presently before this Court is Defendant's Motion for Summary Judgment.

**II.**     <u>**Factual and Procedural Background**</u>

Plaintiff is a fifty-five year old woman with a high school education.  At the time of her alleged onset date, she was forty-nine years old.  Plaintiff claims she was terminated from her job for excessive absenteeism caused by her frequent panic attacks and lower back pain.  According to Plaintiff, she has been unable to work since her termination in December 2001 because she suffers from an anxiety disorder accompanied by panic attacks, degenerative disc disease of the lumbar spine with radiculopathy, a right ankle fracture and depression.  She has been treated by a

number of physicians including Dr. Mark Adlen, her general practitioner for approximately twenty years, and Dr. Joseph Mormello, a chiropractor. She was also briefly treated by a psychologist, Dr. Greesh Sharma, for her mental health issues.

Plaintiff filed an application for disability and DIB on September 27, 2002, which was initially denied on February 7, 2003. She then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted that hearing on August 11, 2003 and issued a decision in February of the following year finding that Ms. Ceriani was not disabled as it is defined in the Social Security Act and therefore not entitled to DIB. Plaintiff appealed that decision to the Social Security Appeals Council. On October 29, 2004, the Appeals Council vacated the ALJ's decision and remanded the case with instructions to further evaluate Plaintiff's mental heath impairment and its impact on her ability to work.

The ALJ held a hearing in response to the remand on March 9, 2005. At the hearing, both the Plaintiff, who was represented by her attorney, and a Vocational Expert ("VE") testified. On September 16, 2005, the ALJ issued her decision finding that Ms. Ceriani was not disabled. Specifically, the ALJ found that, while Plaintiff's impairments of degenerative disc disease with radiculopathy, right ankle fracture and depression were severe within the meaning of the applicable Social Security regulations, she retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, stand for six hours and sit for six hours in an eight hour work day, with an unlimited ability to push and pull, no postural manipulative, visual or communicative limitations, and slight limitations in her ability to carry out detailed instructions and in her ability to interact appropriately. Based on the testimony from the VE, the ALJ concluded that Plaintiff had the ability to perform simple unskilled light work

requiring a minimal amount of social interaction, including as a residential cleaner, produce weigher or bakery worker.  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review and affirmed the ALJ's decision on February 24, 2006.

After receiving a final decision from the Commissioner, Plaintiff then brought an action in this Court on April 26, 2006 seeking review of the ALJ's decision and requesting that this Court enter judgment in her favor and award the benefits to which she claims she is entitled or, in the alternative, remand the claim to the Commission for a proper determination.  Defendant filed the present Motion for Summary Judgment on October 24, 2006, arguing that the ALJ's decision is supported by substantial evidence and should be affirmed.  For the reasons that follow, the Court will grant Defendant's motion.

## III.   Legal Standard

The standard of review of an ALJ's decision is plenary for all legal issues.  See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). The scope of the review of determinations of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision.  See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  As such, "[t]he Court is bound by the ALJ's finding of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); see also Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986) (holding if "an agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings").  The Court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). "Substantial evidence does not mean a large or

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotation omitted).

**IV.    Discussion**

    In order to establish a disability under the Social Security Act, a claimant must demonstrate that she suffers from a mental or physical impairment that prevents her from engaging in substantial gainful activity for a period of at least twelve months.  42 U.S.C. § 423(d).  The Social Security regulations set forth a five-step sequential evaluation process for determining disability:  (1) if the claimant is currently engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a severe impairment; (3) if the claimant has a severe impairment, whether that impairment meets or equals those specifically listed the Social Security regulations, and thus are presumed to be severe enough to preclude gainful work; (4) whether, considering the claimant's residual functional capacity, the claimant can still perform work he or she has done in the past despite the severe impairment; and (5) if not, whether the claimant is capable of performing any other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and residual functional capacity.  Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004); 20 C.F.R. §§ 404.1520, 416.920.  An affirmative finding at steps one, four or five will lead to a finding that claimant is not disabled.  20 C.F.R. § 404.1520(b)-(g).

    Plaintiff contends that the ALJ made mistakes of fact and law when the ALJ failed to find that Plaintiff's anxiety was severe under step two of the sequential evaluation process, rejected the opinion of Plaintiff's treating physician, Dr. Mark Adlen, and chose not to credit Plaintiff's

own hearing testimony.  Defendant responds that the ALJ's finding that Plaintiff is capable of performing some types of work and therefore not disabled is supported by substantial evidence.

### A.  ALJ's Step Two Determination That Plaintiff's Anxiety Was Not Severe

Plaintiff claims the ALJ erroneously found Plaintiff's anxiety was not severe at step two of the sequential evaluation process and therefore precluded any further inquiry into this impairment at subsequent steps.  The ALJ never explicitly rejected Plaintiff's anxiety as non-severe, but Plaintiff contends that the ALJ's reasoning is based on such a conclusion.  Defendant responds that Plaintiff incorrectly focuses on the ALJ's findings with respect to her impairments, and instead should address the limitations caused by those impairments.  Defendant then points to evidence in the record supporting the ALJ's decision that Plaintiff's anxiety did not prevent her from engaging in substantial gainful activity.

At step two of the sequential evaluation process, a claimant must show that she suffers from a severe impairment "which significantly limits one's physical or mental ability to do basic work activities" for a minimum of a twelve month statutory period.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Courts have interpreted the requirement as requiring a claimant to present evidence that he or she suffers from more than a "slight abnormality or a combination of abnormalities that do not significantly limit any basic work activity."  See, e.g., Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  Thus, the step two inquiry is de minimis screening device used to eliminate spurious claims of disability.  See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); Newell, 347 F.3d at 546-47.  Provided a claimant is able to show that she suffers from more than a "slight abnormality," the step two requirement is met, and the ALJ should continue with the sequential evaluation process.  Newell, 347 F.3d at 546.

The ALJ's opinion states at step two that the Plaintiff suffers from three severe impairments:  degenerative disc disease with radiculopathy, right ankle fracture and depression. (R. 18.)  The ALJ does not list Plaintiff's anxiety and resulting panic attacks.  However, contrary to the Plaintiff's assertion, the ALJ's analysis under step four of Plaintiff's residual functional capacity seems to presume the ALJ found Plaintiff's panic attacks and anxiety were in fact severe impairments under the Social Security regulations.  Responding to Plaintiff's claims she could not work as a result of neck, back and leg pain and panic attacks and fatigue, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. . . . [h]owever, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."  (R. 19.)  Several paragraphs later the ALJ continues, "claimant's allegation that she suffers from a debilitating mental disorder is undermined by her hearing testimony indicating she stopped seeing psychologist Dr. Sharma because she did not like him" and failed to seek out another psychologist at the suggestion of her primary care physician, Dr. Adlen.  (R. 20.)  Moreover, the ALJ observed:

> The claimant reported severe anxiety about going out, but she was a relaxed appearing, smiling person at the disability hearing in March 2005.  I cannot reconcile claimant's testimony of severe, crippling anxiety with her hearing appearance as well as with her routine, non-intensive treatment with her family doctor and her failure to be in treatment with any mental health professional(s) for a protracted period of time.  For these reasons, I find her testimony non-credible.

Id.

In another portion of the decision, the ALJ rejected the opinion of Dr. Adlen that the claimant suffers from "panic attacks . . . so severe she is incapable of doing anything."  Id.  The ALJ noted that Dr. Adlen is not a mental health professional and pointed out, incorrectly, that Dr. Adlen had failed to urge the Plaintiff to seek out outpatient mental health treatment.  Finally,

-6-

after focusing almost exclusively on Plaintiff's testimony and evidence with respect to her anxiety disorder, the ALJ concludes "the above residual capacity is supported by the relatively benign findings, the limited degree of treatment the claimant has received and her nearly normal activities of daily living." (R. 20-21.)

In sum, the ALJ's reasoning and conclusion under step four are based on the presumption that Plaintiff's anxiety was a severe impairment within the meaning of the Social Security regulations. To remand this case solely because the ALJ neglected to list Plaintiff's anxiety as severe under step two would be overly formalistic and unnecessary in light of the ALJ's extensive discussion of Plaintiff's anxiety disorder under step four. See McCrea, 370 F.3d at 361-62 (observing that step two "is to be rarely utilized as basis for the denial of benefits" and observations made in step two may have some relevance to later steps of the sequential analysis). Indeed, the ALJ's opinion overall seems to conflate the Plaintiff's depression and anxiety as symptoms of a single "debilitating mental disorder." (R. 20.) The Court concludes that the Commissioner's step two determination was not entered in error and will instead turn to the question of whether the ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence.

### B.    ALJ's Evaluation of Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Mark Adlen, that she is unable to do any substantial gainful work and therefore totally disabled. She notes that Dr. Adlen has treated her for approximately twenty years as her family physician and has submitted numerous opinions and reports about her work-related limitations. According to Plaintiff, these opinions are consistent with Dr. Adlen's own treatment notes and the other

medical evidence in the record, including the notes of the consultative examiner, Dr. Komal

Saraf, and Plaintiff's treating psychologist, Dr. Greesh Sharma.

Defendant responds that Dr. Adlen's findings are conclusory, contradictory and

unsupported by the record.  Defendant further questions whether Dr. Adlen's treatment notes

from January 2000 through February 2005 reflect whether his diagnoses of anxiety, depression

and panic attacks were based on first-hand observation or, instead, on Plaintiff's subjective

complaints.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, 'especially when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'"

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422,

429 (3d Cir. 1999)).  If treating physicians' opinions are well-supported by diagnostic evidence

and consistent with other medical evidence in the record, they will be afforded controlling

weight, and it is an error of law to reject such an opinion without adequate explanation.  Fargnoli

v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); 20 C.F.R. § 404.1527(d)(2).  Moreover, "greater

weight should be given to the findings of a treating physician than to a physician who has

examined the claimant as a consultant."  Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994).

An ALJ may discount a treating physician's opinion only if it is contradicted by other evidence in

the record.  The existence of such contradictory evidence gives rise to a "particularly acute need

for an explanation of the reasoning behind the ALJ's conclusions" and will lead a court to vacate

or remand a case where no explanation is provided.  Fargnoli, 247 F.3d at 42.

Dr. Adlen completed a number opinions about Plaintiff's work-related limitations and her

RFC, dated June 17, 2003, August 5, 2003 and March 22, 2005.   The ALJ chose not to give Dr. Adlen's opinions about Plaintiff's physical or mental limitations controlling weight.  In support of this conclusion, the ALJ states that Dr. Adlen's "physical and mental checklist statements are unsupported by his routine at most monthly treatment notes and his absence of referrals to mental health or orthopaedic specialists, which would be expected if he believed that the claimant was as impaired as he related to her disability attorney."  (R. 20.)

1.      <u>Physical Limitations</u>

In his introductory letter to Plaintiff's March 22, 2005 RFC Questionnaire, Dr. Adlen observes that Plaintiff suffers from "low back pain, which is a chronic lumbo-sacral strain and sprain, [which] causes her discomfort and an inability to stay in one position or to walk without antalgic gait."  (R. 431.)  Dr. Adlen's checklist statements indicate that Plaintiff has significant physical limitations inhibiting her ability to perform work-related tasks including an inability to sit or stand for more than an hour in an eight hour work day or to lift more than ten pounds.  (R. 432.)  Dr. Adlen further indicates that Plaintiff can never bend, squat, crawl, climb, reach, stoop, crouch, or kneel and can never tolerate exposure to unprotected heights, being around moving machinery, exposure to marked temperature changes, driving automotive equipment, exposure to dust, fumes and gases, or exposure to noise.  (R. 433.)

Even though the ALJ did not credit Dr. Adlen's assessment of Plaintiff's physical limitations, she took some of Plaintiff's physical limitations into account in determining that Plaintiff could stand or sit for six hours in an eight hour work day and lift and carry twenty pounds occasionally and ten pounds frequently.  These limitations are in accord with those listed in Plaintiff's Physical RFC Assessment, dated January 29, 2003, completed by a Disability

Determination Service physician.  (R. 354-61.)  Based on a review of the information in the

Plaintiff's file, which did not include Dr.  Adlen's treatment records, the examiner wrote that,

while Plaintiff's impairments "could reasonably be expected to cause pain and fatigue, the

claimant requires only [a Soma prescription] for pain relief."  The report continues that

symptoms of "ADL competence are variable, but preponderance of evidence is that claimant can

perform all but strenuous or heavy activities."  (R. 359.)

      The Court finds that the ALJ's decision not to give controlling weight to Dr.  Adlen's

opinion as to Plaintiff's physical limitations was supported by substantial evidence.  There is no

record support for Dr. Adlen's conclusory assertions about Plaintiff's physical limitations as

reflected by his checklist statements.  As the Third Circuit has observed, "[f]orm reports in which

a physician's obligation is only to check a box or fill in a blank are weak evidence at best."

Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).  Furthermore, Dr.  Adlen offers no

written report to support those checklist statements.  When residual capacity reports are

unaccompanied by thorough written reports, their reliability is suspect.  See Brewster v. Heckler,

786 F.2d 581, 585 (3d Cir. 1986).  Normally, this observation cuts in favor of the opinion of a

treating physician but, in this case, the January 29, 2003 RFC contains a more detailed written

basis for the examiner's conclusion that the Plaintiff retains the RFC to engage in some light

physical activity.

      In addition, although Dr. Adlen's treatment records frequently mention Plaintiff's pain

symptoms, these two and three word notations offer no indication of the extent to which these

symptoms inhibit Plaintiff's daily functioning.  Plaintiff's own hearing testimony also offers little

support for the conclusion that she may only sit or stand for an hour at a time and may never

bend or kneel, among other things.  Instead, while Plaintiff testified that she continues to suffer from back pain, she attributed her inability to work primarily to her mental and not physical ailments.  Plaintiff testified at the hearing that she believes she cannot work because "I don't want to be around people and I get real anxiety, a lot of anxiety.  And I have depression, I don't want to get out of bed and get ready.  And because of my physical ailments.  But mostly I just don't want to – I'm scared."  (R. 98.)

The ALJ observed incorrectly that Dr.  Adlen had not referred Plaintiff to any other specialists to address Plaintiff's physical impairments, but even Plaintiff's consultations with those specialists do not support the degree of physical limitations found by Dr. Adlen.[1]  Dr. Steven Urbaniak, a neurologist who examined Plaintiff on June 27, 2003, found that Plaintiff had mild diffuse edema in the lower extremities, a positive straight leg test on her left side, mild lumbosacral spasm and decreased range of motion at the lumbosacral spine.  At the same time, he observed that she appeared to have full strength throughout, no significant atrophy, normal tone and bulk, and a gait that was antalgic but steady with a cane.  (R. 363.)

Dr.  John Petolillo Jr., an orthopaedist, treated Plaintiff for a right ankle injury in 2004. (R. 405-29.)  Dr.  Petolillo's most recent treatment report, dated November 1, 2004, indicates that Plaintiff told him that her pain was now minimal although she experienced constant moderate discomfort and that the "symptoms increase with long periods of standing, with going from a sitting position to a standing position and for the first several steps and with walking." His own examination revealed an antalgic gait and tenderness and swelling at the ankle.  (R.

---

[1]  Dr.  Adlen also appears to have referred Plaintiff to another orthopaedist, Dr.  Frank Cuce, for treatment of left elbow pain caused by an injury preceding her termination.  (R. 253-60.)

406-07.)  At the hearing, Plaintiff did not testify about whether this ankle injury continued to cause her pain, and Dr.  Adlen's 2005 RFC makes no reference to this ankle injury.  Instead, both Dr.  Adlen's RFC and Plantiff's testimony focus on Plaintiff's back pain.

The ALJ took Plaintiff's physical limitations into account in concluding that the Plaintiff could only perform light work.  The contradictory medical evidence in the record about the extent of Plaintiff's physical limitations and the conclusory nature of Dr.  Adlen's opinion about Plaintiff's physical limitations lead this Court to conclude that ALJ did not err in not giving that opinion controlling weight.

### 2.    Mental Limitations

In a letter to Plaintiff's disability attorney on March 22, 2005, the opinion upon which the ALJ focuses in her decision, Dr. Adlen writes that Plaintiff has been a patient in his office for approximately twenty years and that she "continues to suffer from incapacitating anxiety and panic attacks, as well as bipolar depression."  (R. 431).  He assesses the panic attacks as "so severe she is incapable of doing anything" and notes that, despite attempts at rehabilitation and medication, "her condition remains unchanged."  Id.  Dr. Adlen's RFC questionnaire of the same date opines that Plaintiff has poor or no ability to function independently, maintain attention and concentration or relate predictably in social situations.  (R. 434-35.)  He further indicates that she has only a fair ability to deal with the public, understand, remember and carry out even simple job instructions, behave in an emotionally stable manner or demonstrate reliability.  Id.

In rejecting Dr. Adlen's conclusions about Plaintiff's mental health, the ALJ points out that Dr. Adlen is not a mental health professional and did not urge Plaintiff to seek out mental health treatment.  As with Dr.  Adlen's opinion about Plaintiff's physical limitations, the ALJ

observes that Dr. Adlen's mental checklist statements "are unsupported by his routine at most
monthly treatment notes and his absence of referrals to mental health or orthopaedic specialists,
which would be expected if he believed that the claimant was as impaired as he related to her
disability attorney."  (R. 20.)

The Court finds that the ALJ's conclusion that the questionnaire's answers are
unsupported by clinical findings is based on substantial evidence.  The report by Dr. Adlen,
although certainly entitled to some respect as that of her treating physician for a number of years,
is not entitled to controlling weight in this case.  Dr. Adlen is not a mental health professional,
although he has had a longstanding treatment relationship with Plaintiff and has prescribed a
number of medications to treat her mental health problems over the years.  Dr. Adlen's March
2005 letter, contrary to the written opinions of most treating physicians that have been reviewed
in connection with Social Securities appeals, is extremely conclusory.  Moreover, as with his
treatment notes regarding Plaintiff's physical conditions, Dr. Adlen's one or two word notations
of anxiety/depression and panic attacks do not support a finding that Plaintiff is completely
incapacitated by her mental limitations from performing any gainful activity.  In addition, it is not
clear from some of these notes whether Dr. Adlen actually observed Plaintiff's anxiety or simply
noted that she had reported these symptoms.

The contradictory evidence in the record also leads the Court to conclude that the ALJ
was not obligated to give Dr. Adlen's opinion controlling weight.  The treatment notes completed
by psychologist Dr. Greesh Sharma, who treated Plaintiff from May 28, 2003 to July 23, 2003,
are not entirely consistent with Dr. Adlen's evaluation.  Dr. Sharma diagnosed Plaintiff with
panic disorder and assigned her a GAF score of 60, which indicates moderate symptoms.  (R.

-13-

367.)   In his notes, Dr. Sharma writes that Plaintiff has a history of chronic emotional, addiction

and dependence problems and recommends psychiatric counseling.  (R. 373.)  However, Dr.

Sharma did not reach any conclusions similar to Dr. Adlen's conclusion that Plaintiff is

completely incapacitated by these conditions from performing any work-related activity.

Furthermore, there is a neurological report in the record from Dr. Urbaniak dated June 27, 2003,

showing a comprehensive neurological examination and not making any findings that are

supportive of disability or corroborative of Dr. Adlen's conclusions.  (R. 362-63.)

    The opinion of a non-examining state agency psychologist and disability examiner also

contradicts Dr. Adlen's assessment.  (R. 336-53.)  That psychologist reviewed Plaintiff's claim in

January 2003 and opined that Plaintiff has no significant limitations in most work-related areas

and only moderate limitations in maintaining attention and concentration for extended periods,

accepting instructions and responding appropriately to criticism from supervisors, and setting

realistic goals or make plans independently of others.  (Tr. 336-37).

    Finally, a Clinical Psychology Disability Evaluation, dated November 22, 2002,

completed by Dr. Komal Saraf is also inconsistent with Dr. Adlen's opinion.  After examining

Plaintiff, Dr. Saraf diagnosed her with a recurrent major depressive disorder, generalized anxiety

disorder and tranquilizer dependence and assigned her a Global Assessment of Functioning

("GAF") score of 50 to 70, which corresponds to a range of mild to serious symptoms.  Dr. Saraf

noted Plaintiff's prognosis is "guarded in view of multiple conditions and its related long history

of depression and anxiety," but found that she is capable of managing her own finances.  (R.

283.)  He concluded that Plaintiff's ability to make occupational, performance and personal-

social adjustments is fair to good in most categories.  (R. 284-85.)

-14-

Dr. Saraf's evaluation contradicts Dr. Adlen's conclusion that Plaintiff's symptoms would preclude her from performing any substantial gainful activity.  This Court is well aware of the requirement that "greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant."  Adorno, 40 F.3d at 47; see also SSR 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")  Nonetheless, as noted above, Dr. Adlen's RFC evaluation and accompanying letter are conclusory and are not based on a written report.  Dr.  Saraf's written report takes up three single-spaced typewritten pages and provides much more detail about Plaintiff's mental health history than any of Dr.  Adlen's submissions.  (R.  281-83.)

If Dr. Adlen's conclusions had been supported by clinical findings or more detailed observations, this Court would have followed those cases which give great weight of the opinion of the treating physician.  In this case, the Court concludes, as noted above, that the ALJ was justified in rejecting the treating physician's conclusions because they were insufficiently supported, overly conclusory, and contradicted by other findings in the record, including the opinions of other physicians and a review of medical records.  This is, therefore, a rare case, but one in which the Court feels that the conclusions of the ALJ are based on substantial evidence.

Finally, the ALJ also rejected Dr. Adlen's opinion because he writes in his March 22, 2005 letter that "Barbara is unable to do any substantial or gainful work in keeping with her previous job training and educational background."  (R. 431.)  The ALJ is correct that "the test for Social Security disability does not require that the claimant return to her prior relevant work," but instead requires a finding precluding the ability to do any work.  (R. 20.)  Although Dr.

Adlen's opinion read as a whole reaches that conclusion, "[t]he panic attacks are so severe she is incapable of doing anything" (R. 431.), this opinion is not sufficiently supported in the entire record.[2]

**C.    ALJ's Rejection of Plaintiff's Subjective Testimony Regarding Her Conditions**

Plaintiff's final argument is that the ALJ improperly rejected Plaintiff's subjective hearing testimony about the nature and extent of her symptoms.  Defendant responds that the ALJ properly found Plaintiff's subjective complaints were not totally credible in light of the evidence in the record.  In her opinion, the ALJ noted a number of reasons to discount Plaintiff's hearing testimony including her ability to participate in the activities of daily living including attending weekly Alcoholic Anonymous meetings with her brother-in-law, her failure to seek out further mental health treatment for a protracted period of time, her testimony that she had not engaged in substance abuse since the summer of 2004 although her treatment records indicated a emergency room visit for withdrawal in November 2004, and her appearance at the hearing as a "relaxed appearing, smiling person."  (R. 20.)

An ALJ must consider a claimant's subjective symptoms, including pain, and may not discount that testimony if reasonably consistent with the objective medical evidence and other evidence in the record.  <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1275-76 (3d Cir. 1987); 20 C.F.R.

---

[2]  The ALJ was not required to recontact Dr. Adlen to seek clarification on whether he believed Plaintiff was precluded from performing any substantial gainful activity.  Under the applicable regulations, an ALJ need only recontact a medical source if the information received from that sources "is inadequate for us to determine whether you are disabled."
20 C.F.R. § 404.1512.  The ALJ's decision not to give Dr. Adlen's treatment records and opinions controlling weight was not based on a lack of information but instead on the conclusion that Dr. Adlen's opinions were unsupported by the other evidence the record.

§ 404.1529.  It is the ALJ's responsibility to resolve conflicts in the evidence and to determine

credibility and the relative weights to be given to the evidence.  Plummer, 186 F.3d at 429;

Mason, 994 F.2d at 1066.  Thus, an ALJ's credibility determinations are entitled to great

deference and should not be discarded lightly, given his or her opportunity to observe an

individual's demeanor.  See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

      An ALJ is generally entitled to deference in reaching credibility determinations, although

"ALJS may not ignore consistent medical evidence showing disability in favor of their own

opinion that there is no disabling impairment." Allen v. Bowen,  881 F.2d 37, 41 (3d Cir. 1989)

(in context of ALJ dismissing treating physician's evaluation that claimant could only perform

sedentary work).  It is impermissible for an ALJ to reject a claimant's subjective symptoms,

which have been credited by a treating physician, based solely on an ALJ's observation of the

claimant at the hearing and her testimony about her ability to take care of her personal needs,

perform household chores and participate in activities outside the home.  See Frankenfield v.

Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986)

(noting an "ALJ may not substitute his personal reaction to Claimant's responses or physical

appearance for the opinion of the treating physicians").  In this case the ALJ's conclusions are

based on the objective data in the record, including the opinions of other physicians who have

examined Plaintiff, the ALJ's evaluation of the Plaintiff's credibility at the hearing and Plaintiff's

failure to seek long term treatment for her mental health conditions.  See SSR 96-7p, 1996 WL

374186, at *7 (noting an "individual's statements may be less credible if the level or frequency of

treatment is inconsistent with the level of complaints").  The Court concludes that the ALJ's

determination that Plaintiff's statements and testimony were not fully credible is supported by

substantial evidence.

**V.      <u>Conclusion</u>**

The record shows that Plaintiff suffers from physical and mental impairments, but overall, the Court finds that the ALJ's determination was supported by substantial evidence in the record and should not be overturned on appeal.  Although this is a close case, the conclusory opinions of Plaintiff's treating physician do not overcome the absence of objective clinical evidence that Plaintiff's physical and mental impairments keep her from performing any substantial gainful activity.  For these reasons, the Court will grant the Defendant's Motion for Summary Judgment.

An appropriate form of Order follows.

A:\Ceriani v. Barnhart - Memorandum 5-31-07.wpd

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BARBARA CERIANI                    :        CIVIL ACTION

            v.                              :

JO ANNE B. BARNHART                :        NO. 06-1762

## <u>ORDER</u>

AND NOW, this 31st day of May, 2007, for the reasons stated in the foregoing

Memorandum, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc.

No. 11) is GRANTED.

BY THE COURT:

/s/ Michael M.  Baylson
Michael M. Baylson, U.S.D.J.